# EXHIBIT A

Westlaw.

Slip Copy                                                                                                  Page 1
Slip Copy, 2007 WL 2815839 (N.D.Ill.)
**(Cite as: Slip Copy)**

Robinson v. Morgan Stanley
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
Beverly E. ROBINSON, Plaintiff,
v.
MORGAN STANLEY, Discover Financial Services LLC, KPMG, Rocco Degrasse, Tony Deluca, Karen Dollmeyer, Carole Hoffman, Bernice Jee, Kelly McNamara-Corley, David Oppenheim, Kerry Piercy, David Sutter, Vesela Zlateva, Defendants.
No. 06 C 5158.

Sept. 24, 2007.

Beverly E. Robinson, Grayslake, IL, pro se.
Sari M. Alamuddin, Margit E. Anderson, Ross Harlan Friedman, Morgan Lewis & Bockius, LLP, James R. Figliulo, Catherine Mary Towne, Figliulo & Silverman, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

JAMES F. HOLDERMAN, Chief Judge.
*1 On August 24, 2006, *pro se* plaintiff Beverly Robinson ("Robinson") filed her ten-count complaint in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois. On September 22, 2006, defendants Morgan Stanley and Discover Financial Services, LLC properly removed the case to federal court, on the basis of federal question and supplemental jurisdiction. *See,*28 U.S.C. § 1331; 28 U.S.C. § 1367(a); (Dkt. No. 1). Now pending before the court are two separate motions to dismiss.

Defendants Morgan Stanley, Discover Financial Services, LLC, Tony DeLuca, Karen Dollmeyer, Carole Hoffman, Bernice Jee, Kelly McNamara-Corley, David Oppenheim, Kerry Piercy, David Sutter, and Vesela Zlateva ("the Morgan Stanley Defendants") have filed a Motion to Dismiss All of Plaintiff's Complaint Except for the Claims Set Forth in Counts I, Portions of Sept. 24, 2007 Count II and Count IX Against Morgan Stanley. (Dkt. No. 20) ("the Morgan Stanley Defendants' Motion to Dismiss"). The Morgan Stanley Defendants' Motion to Dismiss is granted in part and denied in part. Count 1 (Retaliatory Discharge) is dismissed against all individual defendants; Count 2 (Illinois Whistleblower Act) is dismissed against all individual defendants and against defendant Morgan Stanley and defendant Discover Financial Services, insofar as it asserts claims under §§ 10 and 15 of the Illinois Whistleblower Act; Count 3 (Defamation) is dismissed without prejudice; Count 4 (Intentional Infliction of Emotional Distress) is dismissed with prejudice; Count 5 (Fraud) is dismissed without prejudice; Count 6 (Intentional Interference with Economic Relations) is dismissed with prejudice; Count 7 (Illinois Personnel Record Review Act) remains in its entirety; Count 8 (Illinois Equal Pay Act) is dismissed with prejudice; Count 9 (FMLA) remains in its entirety; and Count 10 (Breach of Contract) is dismissed insofar as it alleges breach of policies set forth in the Employee Handbook.

Defendants KPMG, LLP and Rocco deGrasse have also filed a Motion to Dismiss (Dkt. No. 17) ("KPMG's Motion to Dismiss"). KPMG's Motion to Dismiss is granted in its entirety.

Robinson is given until on or before October 15, 2007 to file a First Amended Complaint consistent with this opinion and order. Defendants are given until October 29, 2007 to answer or plead to the First Amended Complaint.

*BACKGROUND*

For purposes of addressing the pending 12(b)(6) motions, the court accepts as true the following facts, as set forth in the Complaint:

Plaintiff Beverly Robinson ("Robinson") worked in the Internal Audit Department of Morgan Stanley from October 2, 2000 until August 24, 2004. Throughout her employment, Robinson was located in the Discover Financial Services ("DFS") headquarters building in Riverwoods, Illinois.[FN1] Robinson began her career at Morgan Stanley as a Senior Auditor in October, 2000, and was promoted to Electronic Data Processing (EDP) Audit Supervisor in August, 2001. Although Robinson's mid-year review of September, 2001 stated that Robinson was meeting expectations, Robinson was reassigned to the position of Senior Auditor in January, 2002, after returning from almost

two months of approved medical leave for major surgery. Along with her demotion and bad review, Robinson was placed "in the lower of two salary grade levels available for the Senior Auditor position."(Compl.¶ 25). On February 20, 2002, while still working half days pursuant to her FMLA leave, Robinson was put on a corrective action plan.

> FN1. DFS is a wholly owned subsidiary of Morgan Stanley, with its principal place of business in Riverwoods, Illinois.

*2 Robinson's performance appears to have then improved significantly, as she received an "exceeds" performance rating on her mid-year review in July, 2002. However, in December, 2002, Robinson only received a "meets" performance rating. Robinson's boss [FN2] explained to her that Robinson received this rating because she did not exceed the "exceeds" performance rating from the first half of the year. Additionally, Robinson's boss told her that the July, 2002 evaluation could not be changed because Robinson had already signed it. At that point, Robinson began meeting with personnel in Human Resources ("HR"), her boss, and Department Vice President David Sutter ("Sutter") to discuss the proper criteria for performance evaluations. Robinson later asked that these meetings to be discontinued, due to Sutter's increasing retaliation against her for "taking him to HR." (Compl.¶ 32). Robinson submitted her 2003 mid-year self evaluation, a positive review, and received no notification of any changes to it.

> FN2. Robinson does not explicitly name her boss in her Complaint.

In October, 2003, Robinson informed Sutter that she wanted to raise some concerns to the Company Audit Director, who was Sutter's boss. Shortly thereafter, Sutter put Robinson on a 60-day corrective action plan, citing Robinson's desire to go over his head as one of the criticisms. Sutter also made reference to the first corrective action plan. During the meeting in which Sutter and Karen Dollmeyer ("Dollmeyer"), a representative from the Human Resources Department in Riverwoods, Illinois, gave Robinson the corrective action plan, Sutter warned Robinson not to discuss her concerns with anyone, "unless she could get the Company Audit Director in private, during the upcoming Morgan Stanley worldwide audit conference."(Compl.¶¶ 8, 35). In December, 2003, after a restructuring of Robinson's department, Sutter gave Robinson a "needs improvement" year-end review. The October, 2003 corrective action plan was also extended for another 60 days, despite the fact that Sutter failed to obtain feedback from other employees, as requested by Robinson in her meetings with HR and Sutter in early 2003.

On or around February 5, 2004, Robinson delivered a memorandum of approximately twenty-four pages (plus attachments) to the Chief Financial Officer of DFS,[FN3] detailing legal, regulatory, tax, accounting, auditing, and personnel concerns that Robinson had uncovered as an auditor and as a non-auditor. Robinson had previously attempted to raise these issues through normal audit channels, "but each time was stopped and, in many cases, criticized for her efforts by her audit management."(Compl.¶ 39). The following day, the CFO and Kelly McNamara-Corley ("McNamara-Corley"), head of the Law Department in Riverwoods, Illinois, informed Robinson that they were launching an investigation into the concerns Robinson had raised in her memo. At the request of the CFO and McNamara-Corley, Robinson began participating in the investgation by supplying additional information, including documents and names, relevant to the issues raised in Robinson's memo. The investigative team that was assembled to look into Robinson's allegations included David Oppenheim ("Oppenheim") from the Law Department in Riverwoods, Illinois, Bernice Jee ("Jee") from the Human Resources Department (located "somewhere other than Riverwoods, Illinois") (Compl.¶ 10), Carole Hoffman ("Hoffman") from the Morgan Stanley Law Department in New York, an unnamed Audit Director from New York,[FN4] and Rocco deGrasse ("deGrasse") a principal of KPMG, along with other KPMG personnel. Early into the investigation ("after less than one day of meeting with Ms. Jee and Ms. Hoffman to discuss the personnel issues"), members of the investigative team tried to convince Robinson that she should leave the company and they offered to "package her out." (Compl.¶ 44). Robinson reported this attempt to force her to leave the company to the CFO and McNamara-Corley. McNamara-Corley "assured the Plaintiff she had a job in Audit."(Compl.¶ 45). McNamara-Corley and the CFO agreed to continue the investigation into the personnel issues raised in Robinson's memo and to have deGrasse participate in this aspect of the investigation. However, deGrasse was seldom present during the investigation and he "left the room for the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

majority of the time" on the days that he did attend meetings of the investigative team. (Compl.¶ 46).

> FN3. Robinson does not explicitly name the CFO of DFS in her Complaint.

> FN4. It is possible that this individual was defendant Tony DeLuca, who is described elsewhere in the Complaint as "the Company Audit Director with offices in New York."(Compl.¶ 12).

*3 On May 7, 2004, Robinson was given the results of the investigation in a meeting attended by herself, Oppenheim, Jee, Hoffman, and deGrasse. Robinson was told that the investigative team "did not determine any concerns in the audit area," and that they had also determined that there had been no FMLA violations or retaliation against Robinson, although the investigative team acknowledged that some of the personnel issues could have been handled better. (Compl.¶ 48).

While the investigation was ongoing, Robinson also alleges that she was subjected to retaliation by members of the Audit Department. Sutter was aware that Robinson had instigated the investigation, and it was apparent to others in the Audit Department that Robinson was "spending her days in the Law Department and never at her desk."(Compl.¶ 42). Furthermore, almost all of the investigation meetings took place in the same wing as the Audit Department.

Robinson reported this retaliation to the investigative team, who assured her that no retaliation would be tolerated. However, Robinson continued to be subjected to retaliation, as did the one or two people in the Internal Audit Department who still associated with Robinson at that time. Robinson reported the retaliation to Jee, Hoffman, and Kerry Piercy ("Piercy"), Vice President of Human Resources. On or around May 17, 2004, Piercy and another member of Human Resources met with Robinson and "informed her there had been no retaliation" against Robinson or others. (Compl.¶ 50). No action was ever taken in response to the retaliatory conduct that Robinson continued both to experience and to report.

Shortly after the meeting with Piercy, Robinson's manager Vesela Zlateva ("Zlateva") FN5 put Robinson on another corrective action plan. Piercy and Zlateva met with Robinson weekly to give Robinson updates of her performance. At these meetings, Zlateva "would read a list of complaints" about Robinson. (Compl.¶ 54). Upon trying to discuss, correct, or question any of the items on Zlateva's list, Robinson was accused of arguing and not accepting feedback. In mid-June, 2004, the company provided Robinson with an outside coach. Nevertheless, on or around August 6, 2004, Robinson was given a Job-in-Jeopardy memo informing Robinson that if her performance did not improve, she would be terminated. On August 24, 2004 Robinson's employment with Morgan Stanley was terminated.

> FN5. Zlateva had been Robinson's manager since the restructuring in December, 2003. (Compl.¶ 36).

In her Complaint, Robinson brings allegations of retaliatory discharge (Count 1), continuing violations of the Illinois Whistleblower Act (Count 2), continuing tort of defamation (Count 3), intentional infliction of emotional distress (Count 4), fraud (Count 5), intentional interference with economic relations (Count 6), violation of the Illinois Personnel Record Review Act (Count 7), Illinois Equal Pay Act against Morgan Stanley (Count 8), continuing violation of the Family and Medical Leave Act (Count 9), and breach of contract (Count 10).

*4 In their Motion to Dismiss, the Morgan Stanley Defendants seek dismissal of all of Robinson's Complaint, with the exception of certain claims set forth in Counts 1, portions of Count 2, and Count 9 against Morgan Stanley. (Dkt. No. 20). In KPMG's Motion to Dismiss, defendants KPMG and deGrasse seek dismissal of Robinson's fraud claim and her claim against deGrasse under the Illinois Whistleblower Act. (Dkt. No. 17).

*STANDARD OF REVIEW*

Under the Federal Rules of Civil Procedure, a complaint generally need not contain more than "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2). In other words, the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Bell Atlantic Corp. v. Twombly,* ---U.S. ----, ----, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (May 21, 2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80

(1957)). So long as the factual allegations in the complaint "raise a right to relief above the speculative level," the complaint will withstand a 12(b)(6) challenge. *Twombly,* 127 S.Ct. at 1965;*see also Pisciotta v. Old Nat'l Bancorp,* ---F.3d ----, No. 06-3817, 2007 WL 2389770, at *3 (7th Cir. Aug.23, 2007). In conducting its analysis, the court assumes that all well-pleaded allegations in the complaint are true. *Twombly,* 127 S.Ct. at 1965. However, a plaintiff can plead herself out of court if a complaint includes facts that undermine its own allegations. *Kolupa v. Roselle Park Dist.,* 438 F.3d 713, 715 (7th Cir.2006).

As a general matter, "[c]omplaints need not anticipate or attempt to defuse potential defenses."*Doe v. Smith,* 429 F.3d 706, 709 (7th Cir.2005). On the other hand, a plaintiff alleging a claim of fraud or mistake must plead with specificity the who, what, where, and when of the alleged fraud or mistake.Fed.R.Civ.P. 9(b); *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins.,* 412 F.3d 745, 749 (7th Cir.2005).

*ANALYSIS*

In this case, the Morgan Stanley Defendants seek dismissal of each of Robinson's ten counts, or at least some portion thereof. The court in this opinion addresses each count in turn, in the order in which it was alleged in the Complaint.

1. *Count 1-Retaliatory Discharge*

In Count 1 of her Complaint, Robinson alleges a common law cause of action for retaliatory discharge against Morgan Stanley, DFS, and six of the individual Morgan Stanley defendants. Under Illinois law, only Robinson's employer can be held liable for the tort of retaliatory discharge. *See Buckner v. Atlantic Plant Maintenance, Inc.,* 182 Ill.2d 12, 230 Ill.Dec. 596, 694 N.E.2d 565, 570 (Ill.1998) (holding that "the only proper defendant in a retaliatory discharge action is the plaintiff's former employer."). The Supreme Court of Illinois has held that there is no common law cause of action for retaliatory discharge against "agent[s] or employee[s] of the employer who carried out the discharge of the plaintiff on the employer's behalf."*Id.* at 569.At the outset of her Complaint, Robinson alleges that she "is a former employee of Morgan Stanley."(Compl.¶ 1). Robinson also specifically states that she "worked in the Internal Audit Department of Morgan Stanley ... from on or around October 2, 2000 through on or around August 24, 2004."(Compl.¶ 17). Count 1 thus appears to be aimed at Robinson's former employer, Morgan Stanley.

*5 On the other hand, Robinson also alleges that "throughout her employment by Morgan Stanley, [she] was located in the Discover Financial Services (DFS) Headquarters building."(Compl.¶ 1). DFS is a wholly-owned subsidiary of Morgan Stanley, (Compl.¶ 3), and Robinson asserts that "[t]he Defendants have repeatedly claimed the Plaintiff worked for DFS." (Dkt. No. 35 at 3). Recognizing that the true identity of Robinson's former employer as alleged in her Complaint remains an unanswered question of fact, Robinson has brought Count 1 against both Morgan Stanley and DFS. (*Id.*).

"It is the well-settled law of this circuit that *pro se* complaints are to be liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers."*McCormick v. City of Chicago,* 230 F.3d 319, 325 (7th Cir.2000). Because Robinson has alleged Count 1 against both Morgan Stanley and DFS as her former employer, the court declines to decide at this time, on the basis of the pleadings alone, whether Morgan Stanley or DFS is Robinson's former employer for purposes of her retaliatory discharge claim. The Morgan Stanley Defendants' Motion to Dismiss is granted as to the individual defendants, and Count 1 is dismissed as alleged against Zlateva, Piercy, DeLuca, Sutter, McNamara-Corley, and Dollmeyer. The Morgan Stanley Defendants' Motion to Dismiss is denied as to Morgan Stanley and DFS.

2. *Count 2-Continuing Violations of the Illinois Whistleblower Act*

In Count 2 of her Complaint, Robinson alleges various violations of the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/1, *et seq.* As defendants to Count 2, Robinson names all of the Morgan Stanley Defendants, as well as Rocco deGrasse.[FN6]Again, the court is confronted with questions regarding the identity of Robinson's employer. By its own terms, the Whistleblower Act only creates a cause of action against an employer. *See*740 Ill. Comp. Stat. 174/30 ("If an employer takes any action against an employee in violation of Section 15 or 20, the employee may bring a civil action against the employer")." 'Employer' means: an individual, sole

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 5
Slip Copy, 2007 WL 2815839 (N.D.Ill.)
**(Cite as: Slip Copy)**

proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State, except that 'employer' does not include any governmental entity."740 Ill. Comp. Stat. 174/5. As discussed above, Robinson has alleged that both Morgan Stanley and DFS were her employers. Therefore, no cause of action exists against Sutter, Zlateva, Piercy, McNamara-Corley, Jee, Hoffman, Oppenheim, DeLuca, or Dollmeyer. Count 2 is dismissed as to all individual defendants, but remains pending against Morgan Stanley and DFS.

> FN6. In her Response to KPMG's Motion to Dismiss, Robinson agreed to withdraw deGrasse as a defendant under Count 2. (*See*Dkt. No. 28 at 1;Dkt. No. 45 at 2-3). The court construes Robinson's statement as a motion to voluntarily withdraw Count 2 against deGrasse and grants Robinson's motion. Count 2 against deGrasse is dismissed without prejudice.

Furthermore, to the extent that Robinson alleges a claim against Morgan Stanley and DFS for violations of § 10 of the Illinois Whistleblower Act, her claim is dismissed because there is no private cause of action for violations of this section of the statute. *See*740 Ill. Comp. Stat. 174/30 (explicitly creating a cause of action for violations of §§ 15 and 20); *Woodley v. RGB Group, Inc.,* No. 05 C 0548, 2006 WL 1697049, at *5 (N.D.Ill. June 13, 2006) ("The Whistleblower Act does not create a private cause of action under Section 10, however; only sections 15 and 20 do that .").

*6 Additionally, § 15 of the Whistleblower Act only prohibits retaliation against an employee for "disclosing information *to a government or law enforcement agency,* where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."740 Ill. Comp. Stat. 174/15 (emphasis added). In this case, Robinson alleges that she "wanted to raise some concerns to the Company Audit Director," (Compl.¶ 34) and that she:
 delivered a memo of approximately 24 pages plus attachments detailing legal, regulatory, tax, accounting, auditing, and personnel concerns she had uncovered as and [sic] auditor and as a non-auditor to the Chief Financial Officer (CFO) of Discover Financial Services. Plaintiff had previously attempted to raise most, if not all, of these issues through normal audit channels, but each time was stopped and, in many cases, criticized for her efforts by her audit management. The Plaintiff intended to submit the memo to the Chief Executive Officer (CEO) and CFO of both Morgan Stanley and Discover Financial Services, as well as the Morgan Stanley Audit Committee to ensure the appropriate actions could be taken.

(Compl.¶ 39). Robinson alleges that she then participated in an internal investigation "by supplying additional information, documents, names, and other information about the issues she had raised in her memo, as well as many additional issues."(Compl.¶¶ 40-41). Robinson alleges that she "started being subjected to retaliation," in part because "Mr. Sutter had been told about the investigation and knew the Plaintiff had submitted it [sic]." (Compl.¶ 42). Robinson also alleges that it was obvious to others that she was taking part in the investigation, because she spent an unusual amount of time in the Law Department.

Robinson has clearly alleged that she experienced retaliation in response to *internal* complaints made to her employer.[FN7]This type of activity is not protected by the Whistleblower Act. *Riedlinger v. Hudson Respiratory Care, Inc.,* 478 F.Supp.2d 1051, 1054-55 (N.D.Ill.2007). To the extent that Robinson's allegations include a cause of action under § 15 of the Whistleblower Act against Morgan Stanley and DFS, Robinson's claim is dismissed. For purposes of clarity, the court notes that the sole remaining allegation under Count 2 is for violations of § 20 of the Illinois Whistleblower Act, alleged against Morgan Stanley and DFS.

> FN7. Although KPMG was brought into the investigation, KPMG is not a government or law enforcement agency. (Compl.¶¶ 43, 14) ("KPMG is a public accounting firm with offices in Illinois and which conducts business in Illinois.").

3. *Count 3-Continuing Tort of Defamation*

In her third cause of action, Robinson alleges that Morgan Stanley, DFS, Dollmeyer, Piercy, Sutter, and Zlateva are liable for defamatory statements made about Robinson. Generally, Robinson alleges that the named defendants made false written statements in performance reviews, supporting

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                             Page 6
Slip Copy, 2007 WL 2815839 (N.D.Ill.)
**(Cite as: Slip Copy)**

documents, and public records, and disclosed these statements, along with false verbal statements, to others "within and outside the company." (Compl.¶¶ 8587, 89, 102). Robinson also alleges that "Defendants used false and/or misleading statements, accusations, and other information in the manufacturing of a poor work record."(Comp.¶ 102). Robinson does not set forth specific examples of the false statements allegedly made by the named defendants, nor does she describe these statements in any detail. Furthermore, a number of Robinson's allegations do not involve false statements at all (e.g. that defendants made Robinson wait with a security guard in a conspicuous location and that they also told members of the Internal Audit and Law Departments not to talk to Robinson). (Compl.¶¶ 88, 90, 94-97, 99100, 104-05).

*7 When proceeding in federal court, a plaintiff's defamation claims are not subject to the heightened pleading standards of Rule 9. _Muzikowski v. Paramount Pictures Corp., 322 F.3d 918, 926 (7th Cir.2003)._ However, in order to satisfy the requirements of notice pleading, a plaintiff claiming defamation must specifically set forth the words alleged to be actionable. _Johnson v. Joliet Junior College, No. 06 C 5086, 2007 WL 1119215, at *3 (N.D.Ill. Apr.10, 2007)_ (citing _Brown v. GC America, Inc., No. 05 C 3810, 2005 WL 3077608, at *5 (N.D.Ill. Nov.15, 2005))._ "The reason a plaintiff must, under notice pleading requirements, plead the specific words alleged to be actionable is that knowledge of the exact language used is necessary to form responsive pleadings." _Woodard v. Am. Family Mutual Ins. Co., 950 F.Supp. 1382, 1388 (N.D.Ill.1997)._ Although plaintiffs are required to set forth the defamatory language with enough specificity for the defendant to respond appropriately, plaintiffs "need not allege the defamatory language verbatim." _Flentye v. Kathrein, No. 06 C 3492, 2007 WL 1175576, at *11 (N.D.Ill. Apr.18, 2007)_ (quoting _Emery v. Northeast Ill. Reg'l Commuter R.R. Corp., No. 02 C 9303, 2003 WL 22176077, at *7 (N.D.Ill. Sept.18, 2003))._

In this case, Robinson has failed to properly allege her claim for defamation. Robinson's vague allegations of "false statements" that were included in unspecified performance reviews, public records, and other documents are insufficient to put the named defendants on notice of the nature of Robinson's claim. Without notice regarding which statements are alleged to be false, defendants are not in a position to properly answer Robinson's defamation claim. For this reason, Count 3 of Robinson's Complaint is dismissed. Because Robinson is proceeding _pro se,_ this dismissal is without prejudice and Robinson is granted leave to file an Amended Complaint for purposes of addressing the pleading deficiencies of her defamation claim.

As presently alleged, Count 3 is vague and unspecific. Therefore, the court cannot ascertain at this time whether Robinson's defamation claim is barred by the statute of limitations. In considering whether to replead her defamation claim, Robinson is advised to remain cognizant of the applicable one-year statute of limitations. 735 Ill. Comp. Stat. 5/13-201. As the Morgan Stanley Defendants point out, this limitations period generally begins to run at the date of publication of the false statement, although the "discovery rule" may also apply in situations where the plaintiff was unaware of the defamatory statement until a later point in time. _Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, 61 Ill.2d 129, 334 N.E.2d 160, 164 (Ill.1975)_ ("[W]e have no hesitation in saying that the ends of justice in this case will be served by holding that the plaintiff's cause of action accrued at the time it knew or should have known of the existence of the allegedly defamatory report.").

*8 Robinson is also advised to take note of the Morgan Stanley Defendants' stated intent to rely on a qualified privilege in this case. As described by the Supreme Court of Illinois:
The qualified privilege serves to enhance a defamation plaintiff's burden of proof. Where no qualified privilege exists, the plaintiff need only show that the defendant acted with negligence in making the defamatory statements to prevail. [citation] However, once a defendant establishes a qualified privilege, a plaintiff must prove that the defendant either intentionally published the material while knowing the matter was false, or displayed a reckless disregard as to the matter's falseness. [citation]

_Kuwik v. Starmark Star Marketing and Admin., Inc., 156 Ill.2d 16, 188 Ill.Dec. 765, 619 N.E.2d 129, 133 (Ill.1993)._ Whether a qualified privilege exists is a question of law for the court to decide, with the defendant bearing the burden of proof. _Id. at 134._ At the pleading stage, Robinson has no obligation to anticipate or attempt to defuse this potential defense. _Doe v. Smith, 429 F.3d 706, 709 (7th Cir.2005)._ On

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the other hand, Robinson may wish to keep in mind the defendants' intent to assert a qualified privilege as she assesses the strengths and weaknesses of her defamation claim.

The Morgan Stanley Defendants have also stated their intent to assert an absolute privilege in regards to any alleged defamatory statements that were made in connection with judicial (or quasi-judicial) proceedings. See Marchioni v. Board of Educ. of City of Chicago, 341 F.Supp.2d 1036, 1051 (N.D.Ill.2004) ("Once the state court determines that the underlying statement is related to the litigation, there can be no defamation action regardless of a party's 'motive or the unreasonableness of his conduct.'") (quoting Malevitis v. Friedman, 323 Ill.App.3d 1129, 257 Ill.Dec. 209, 753 N.E.2d 404, 407 (Ill.App.Ct.2001)). Again, whether this privilege applies to the facts of this case is a question for a later time. On one further point raised by the Morgan Stanley Defendants, the court notes that there is no cause of action for "self-defamation" under Illinois law. Rice v. Nova Biomedical Corp., 38 F.3d 909 (7th Cir.1994) (citing Layne v. Builders Plumbing Supply Co., 210 Ill.App.3d 966, 155 Ill.Dec. 493, 569 N.E.2d 1104 (Ill.App.Ct.1991)).

Should Robinson choose to replead her defamation claim, after careful consideration of the above-mentioned factors, she is granted leave to file an Amended Complaint for purposes of addressing the pleading deficiencies of Count 3, on or before October 25, 2007, consistent with this order.

4. *Count 4-Intentional Infliction of Emotional Distress*

In Count 4 of her Complaint, Robinson alleges that Morgan Stanley, DFS, Sutter, Zlateva, and Oppenheim are liable for the tort of intentional infliction of emotional distress ("IIED"). In support of her IIED claim, Robinson describes various actions allegedly taken by the named defendants during and after the investigation. During the investigation, Robinson alleges that the defendants did not permit her to inform anyone about her involvement with the investigation, leaving Robinson without explanation for missed meetings, past due deadlines, and prolonged absences from her desk. Robinson alleges that she informed the defendants about the tremendous amount of stress that this restriction was causing her and asked them to explain the situation to the Audit Department, but the defendants failed to do so. At the same time, Robinson alleges that the defendants told members of the Internal Audit and Law Department not to talk to or associate with Robinson. Additionally, the defendants allegedly retaliated against the Internal Audit Department's administrative assistant for being friends with Robinson by threatening the assistant's job if she did not report information about Robinson to the defendants. The defendants also repeatedly questioned the administrative assistant about Robinson. Another member of the Internal Audit Department was made to feel retaliated against for being friends with Robinson, after he ignored the defendants' warnings to stay away from her.

*9 During the investigation, the Vice President would not talk to Robinson, avoided her work area, would not meet with her alone, and cancelled all previously scheduled one-on-ones with Robinson. Furthermore, Robinson's boss started wearing perfume every time he met with her, knowing that Robinson was highly allergic to perfume and that exposure in small areas, such as the room in which they usually met, would cause Robinson to miss days of work. Robinson's boss then criticized her for missing deadlines.

Robinson also alleges that the defendants did not allow Robinson to participate in the summer hours program during the summer of 2004, that they did not pay Robinson for taking a scheduled vacation day on her husband's birthday in late July, and that they refused to allow Robinson to attend out-of-town training that would have provided her with necessary continuing professional education requirements for purposes of maintaining her professional certification and meeting her professional goals.

Robinson alleges that the defendants used false information to manufacture a poor work record. Additionally, the defendants refused to return documents to Robinson at the close of the investigation, while criticizing her for not completing work that she could not perform without these files. Robinson alleges that she was told that members of the Human Resources Department and/or Law Department were monitoring her actions on surveillance cameras at the end of the investigation. Finally, Robinson alleges that the defendants humiliated her when they terminated her during work hours, went through her desk in view of her co-workers, and made her stand outside the main entrance for over half an hour while people were

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

passing by.

In Illinois, the applicable statute of limitations for an IIED claim is two years. *Pavlik v. Kornhaber,* 326 Ill.App.3d 731, 260 Ill.Dec. 331, 761 N.E.2d 175, 186 (Ill.App.Ct.2001). Robinson filed her lawsuit on August 24, 2006, exactly two years after her employment with Morgan Stanley/DFS was terminated. In arguing for dismissal of Robinson's IIED claim, the Morgan Stanley Defendants note that all but one of the allegations included in Count 4 involve conduct that occurred more than two years before Robinson's lawsuit was filed. The lone allegation that occurred within the limitations period is Robinson's allegation that "Defendants humiliated the Plaintiff when they terminated her during work hours, went through her desk in view of her co-workers, and made her stand outside the main entrance for over half an hour while people were passing by." (Compl.¶ 108). The Morgan Stanley Defendants argue that this allegation alone cannot anchor Robinson's IIED claim within the limitations period, because it is not sufficiently related to the other allegations so as to form a "pattern and course" of outrageous conduct.

Robinson argues that her claim is not time-barred, because where "acts are continuous, by the same actor, and of a similar nature, the prescriptive period for intentional infliction of emotional distress does not commence until the last act occurs or the conduct is abated."*Pavlik,* 260 Ill.Dec. 331, 761 N.E.2d at 187. Because the "last act" of intentional infliction of emotional distress occurred within the limitations period, Robinson argues that her IIED claim is timely.

*10 In *Pavlik,* the plaintiff complained of a series of unwanted sexual advances that occurred during therapy sessions required by her employer. The Appellate Court of Illinois, First District, held that a phone call and letter received within the limitations period should be considered "a continuation of the ongoing inappropriate dialogue initiated by [the defendant]," such that the culmination of the tortious act was found to have occurred within the limitations period. *Pavlik,* 260 Ill.Dec. 331, 761 N.E.2d at 188. In contrast to *Pavlik,* the one act described by Robinson that occurred within the limitations period in this case does not significantly resemble or relate to the earlier acts of which she complains. The majority of the allegations in Robinson's IIED claim describe a pattern and practice of intentionally isolating Robinson, disrupting her ability to perform her job duties, and denying her certain employment benefits. The act that occurred on the date of Robinson's termination is not of a sufficiently similar nature to suggest that it should be considered a continuation of the earlier conduct. While Robinson may have felt "humiliated" at having been terminated during working hours within the sight of her co-workers and friends, the actions allegedly taken by the defendants on August 24, 2004 do not suggest further attempts to shun Robinson, obstruct her ability to perform her duties, or single her out for loss of employee benefits. Because no part of the alleged pattern of extreme conduct took place within the applicable limitations period, the court finds that Robinson's IIED claim is time-barred. Count 4 is therefore dismissed with prejudice.

*5. Count 5-Fraud*

In Count 5 of her Complaint, Robinson alleges that Morgan Stanley, DFS, KPMG, Jee, Hoffman, Oppenheim, McNamara-Corley, DeLuca, and deGrasse engaged in numerous fraudulent misrepresentations regarding both their investigation of the concerns raised in Robinson's memorandum and their handling of Robinson's employment and performance issues. Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."Fed.R.Civ.P. 9(b). It is by now well-settled that a complaint alleging fraud must provide "the who, what, when, where, and how" of the alleged fraudulent action, so as to avoid "the great harm to the reputation of a business firm or other enterprise a fraud claim can do."*Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir.2007) (citations omitted).

In her Complaint, Robinson does not set forth any specific statements or misrepresentations made by individually-named defendants. Rather, Robinson includes general allegations against "Defendants" as a group, without stating details such as what was said, by whom, in what context, or when and where these communications took place. For example, Robinson alleges in one typical paragraph of her Complaint that, "Defendants misrepresented to the Plaintiff that the investigation, all information she gave them, and her participation would be kept confidential."(Compl.¶ 124). Robinson does not clarify whether this particular misrepresentation was

made in writing or orally, if the misrepresentation was made by the entire investigative team or by certain individuals, if it was made at any particular meeting or made in passing, when it was made, or if it was made more than once.

*11 Federal Rule of Civil Procedure 9(b) "require[s] the plaintiff to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir.1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992)). Furthermore, a plaintiff cannot "lump defendants together and attribute[ ] misrepresentations to them as a group." *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 873 F.Supp. 111, 119 (N.D.Ill.1995) (citing *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990)). Rather, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir.1994)). Without further specifics, the named defendants are not in a position to respond to generalized allegation of fraud.

In this case, because Robinson has failed to plead Count 5 with sufficient particularity, it is dismissed. However, Robinson assures that court that "[i]f the Court determines it necessary, the Plaintiff can, and will, file an amended Complaint including specifics" of her fraud count. (Dkt. No. 45 at 3; *see also* Dkt. No. 35 at 9). Robinson is therefore given the opportunity to replead her fraud claim, with particularity, in a First Amended Complaint should she choose to do so.

6. *Count 6-Intentional Interference with Economic Relations*

In Count 6 of her Complaint, Robinson alleges that Morgan Stanley, DFS, Zlateva and Sutter engaged in "intentional interference with economic relations." The Morgan Stanley Defendants argue that there is no such claim under Illinois law, and the court's own review has failed to uncover any case law employing this terminology. Although it is possible that Robinson meant to allege either intentional interference with contract or intentional interference with prospective economic advantage, as suggested by the Morgan Stanley Defendants in their citation to *Otterbacher v. Northwestern Univ.*, 838 F.Supp. 1256, 1260-61 (N.D.Ill.1993), Robinson makes no effort to defend Count 6 or to clarify its meaning or scope. Furthermore, as the Morgan Stanley Defendants point out, these torts "usually lie against third-parties who cause the employer/employee relationship to terminate and not against the employer or agent who terminates the employee." *Id.* Accordingly, the court grants the Morgan Stanley Defendants' Motion to Dismiss and dismisses Count 6 with prejudice.

7. *Count 7-Violation of the Illinois Personnel Record Review Act*

In Count 7 of her Complaint, Robinson alleges that Morgan Stanley, DFS, Piercy, Zlateva, Sutter, and Dollmeyer violated the Illinois Personnel Record Review Act, 820 Ill. Comp. Stat. 40/1, *et seq.* (the "PRRA"), by using information "which was not included in the personnel record but should have been as required by [the PRRA]" in a judicial proceeding (Case 2005-SOX000044) and by "soliciting information about Robinson's association and conversations outside of work."(Compl.¶¶ 149, 151).[FN8]

> FN8. Robinson also alleges that the Morgan Stanley Defendants "plan to further violate this statute by using at least some of the same and/or other documents not included in the plaintiff's personnel file as evidence in federal case # 05C-4258."(Compl.¶ 150). This type of speculative, future harm is not actionable.

*12 The Morgan Stanley Defendants argue that Robinson's claim necessarily fails because she did not exhaust her administrative remedies, as required by §§ 12(b) and 12(c) of the PRRA. In support of their argument, the Morgan Stanley Defendants cite to *Anderson v. Board of Education of the City of Chicago*, 169 F.Supp.2d 864, 870 (N.D.Ill.2001). While the court is inclined to agree with Judge Gettleman's opinion in the *Anderson* case that the PRRA generally requires exhaustion of administrative remedies, the court notes that this is an affirmative defense that need not be anticipated by Robinson in the filing of her Complaint. *Salas v. Wisconsin Dept. of Corrections* 493 F.3d 913, 922 (7th Cir.2007) ("A plaintiff's failure to exhaust administrative remedies is an affirmative defense, which is the defendant's burden to prove."). The Morgan Stanley Defendants' argument that

Slip Copy                                                                                                                Page 10
Slip Copy, 2007 WL 2815839 (N.D.Ill.)
**(Cite as: Slip Copy)**

"Robinson does not allege that she filed a complaint with the Department of Labor" (Dkt. No. 21 at 20) is therefore inappropriately asserted at this time and their request to dismiss Count 7 on these grounds is denied.

8. *Count 8-Illinois Equal Pay Act Against Morgan Stanley*

In Count 8 of her Complaint, Robinson alleges that Morgan Stanley, DFS and Piercy violated the Illinois Equal Pay Act of 2003, 820 Ill. Comp. Stat. 112/1, *et seq.*, by "threaten[ing] the Plaintiff with disciplinary action if she were to discuss salaries in any way with other members of the Internal Audit Department located in Riverwoods."(Compl.¶ 154). Section 10(b) of the Illinois Equal Pay Act states:

It is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this Act. It is unlawful for any employer to discharge or in any other manner discriminate against any individual for inquiring about, disclosing, comparing, or otherwise discussing the employee's wages or the wages of any other employee, or aiding or encouraging any person to exercise his or her rights under this Act.

820 Ill. Comp. Stat. 112/10(b).

The Morgan Stanley Defendants argue that Robinson "does not allege that she engaged in protected activity (i.e., that she disclosed or discussed wages with other employees) or that she was discharged or disciplined for doing so."(Dkt. No. 21 at 21). However, Robinson has alleged that she was threatened with disciplinary action if she were to engage in activities protected by the Illinois Equal Pay Act. This type of threat could certainly qualify as "interfering" with the exercise of a right provided under the Illinois Equal Pay Act, and the court denies the Morgan Stanley Defendants' request to dismiss Count 8 on these grounds.

On the other hand, the court agrees with the Morgan Stanley Defendants that there is no private cause of action under the Illinois Equal Pay Act for the type of violation alleged by Robinson. Whereas the Illinois Equal Pay Act provides a private cause of action for employees who have been underpaid, *see*820 Ill. Comp. Stat. 112/30(a), penalties for all other violations can only be recovered "in a civil action brought by the Director in any circuit court."820 Ill. Comp. Stat. 112/30(c). The court will not find an implied private right of action where the plain language of the statute assigns enforcement of its provisions to a specific agency. Count 8 is therefore dismissed with prejudice.

9. *Count 9-Continuing Violation of the Family and Medical Leave Act (FMLA)*

**\*13** Robinson brings Count 9 of her Complaint, for violations of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, ("the FMLA") against defendants Morgan Stanley, DFS, Sutter, Jee, Piercy, Dollmeyer, and Hoffman. The FMLA explicitly creates a private cause of action by an employee against his or her employer. *See*29 U.S.C. § 2617(a)(2). Unlike the common law, the FMLA includes a specific definition of the term "employer":

any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year ... [including] ... any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer

29 U.S.C. § 2611(4)(A)(i), (ii). As discussed above, the court declines to decide at this point in the proceedings whether Morgan Stanley or DFS should be considered Robinson's employer, noting that Robinson has alleged her claims against both business entities. The court therefore denies the Morgan Stanley Defendants' Motion to Dismiss Count 9 as it applies to defendants Morgan Stanley and DFS.

Furthermore, although the Seventh Circuit has not addressed the question of whether an individual can be held liable for violations of the FMLA, district courts have consistently found that individual liability under the FMLA is appropriate where an employee "controlled 'in whole or in part' [the plaintiff's] ability to take a leave of absence and return to her position."*Freemon v. Foley,* 911 F.Supp. 326, 332 (N.D.Ill.1995); *see also Smith v. Univ. of Chicago Hosp.,* No. 02 C 0221, 2003 WL 22757754, at *6 (N.D.Ill. Nov.20, 2003) (collecting cases).

In this case, the Morgan Stanley Defendants argue that "Robinson's Complaint contains no allegations asserting that any of the individual

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendants in this count ... qualify as an 'employer' under the statute. Thus, her FMLA claims should be dismissed against the individual defendants on this basis alone."(Dkt. No. 21 at 23). This argument misses the mark, as Robinson is not required to allege particular facts at this point in the proceedings. As recently articulated by the Supreme Court of the United States:

   While a complaint attacked by a Rule 12(b)(6) motion to dismiss *does not need detailed factual allegations,* a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

   *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, ---- - ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (May 21, 2007) (internal citations omitted) (emphasis added). The Seventh Circuit has interpreted this language to mean "only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."*Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* No. 06-2949, 2007 WL 2406859, at *4 (7th Cir. Aug.24, 2007). In *Airborne Beepers,* the Seventh Circuit specifically relied on the Supreme Court's later decision in *Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (June 4, 2007), which reaffirmed that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson,* 127 S.Ct. at 2200.

   *14 Robinson has brought her FMLA claim against individuals whom she identifies as her supervisor (David Sutter), three Human Resources employees (Kerry Piercy, Karen Dollmeyer, and Bernice Jee), and a member of the Morgan Stanley Law Department (Carole Hoffman). (Compl.¶¶ 5, 7-8, 10, 13). In support of her FMLA claim, Robinson specifically alleges that she received a "meets" performance rating in mid-September, 2001, that she took FMLA leave beginning November 29, 2001, and that, upon her return on January 25, 2002, she was informed by her boss that she was being demoted and would be receiving a bad review. (Compl.¶¶ 23-25). Robinson also alleges that she was put on a corrective action plan on February 20, 2002, while still on half days under FMLA. (Compl.¶ 27). At a May 7, 2004 meeting with Oppenheim, Jee, Hoffman, and deGrasse, Robinson was informed that her demotion was due to a "restructuring" of her department and was not related to her FMLA leave; however, Robinson alleges that this was not true, as "no other members of the department had their title or responsibilities lowered."(Compl.¶¶ 48, 156). Furthermore, Robinson's boss told her that the change was a demotion, and "an HR representative with knowledge of the events" told Robinson "that she was demoted because she went on FMLA."(Compl.¶ 156).

   While the factual allegations included in Robinson's Complaint are not set forth in great detail, the court finds they suffice to paint a picture of the allegations against the Morgan Stanley Defendants, such that the Morgan Stanley Defendants are sufficiently on notice of the claims alleged against them and are in a position to formulate an appropriate response. Robinson's allegations raise her right to relief "above the speculative level," which is all that is required at this point in the proceedings.[FN9] In other words, the court finds it plausible that each of the named defendants may have exercised some level of control over Robinson's ability to exercise her right to FMLA leave. *Compare Twombly,* 127 S.Ct. at 1974 (dismissing the complaint because the plaintiffs ..."have not nudged their claims across the line from conceivable to plausible"). The court therefore denies the Morgan Stanley Defendants' Motion to Dismiss Count 9 as it pertains to defendants Sutter, Piercy, Dollmeyer, Jee, and Hoffman.

> FN9. The Morgan Stanley Defendants cite to *Burke v. Nalco Chemical Co.,* No. 96 C 981, 1996 WL 411456, at *2 (N.D.Ill. July 18, 1996) and *Edwards v. Illinois Circuit Court,* No. 98 C 4334, 1999 U.S. Dist. LEXIS 1115, at *8 (N.D.Ill. Feb.1, 1999) for the proposition that a complaint cannot survive a motion to dismiss if it does not "at least contain allegations establishing that the defendant is an 'employer' within the meaning of the FMLA."(Dkt. No. 21 at 22-23). While this authority is somewhat persuasive, the court notes that in neither of these cases were the FMLA claims dismissed *solely* for failure to allege that the defendants qualified as "employers" pursuant to the provisions of the FMLA.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 12
Slip Copy, 2007 WL 2815839 (N.D.Ill.)
**(Cite as: Slip Copy)**

10. *Count 10-Breach of Contract*

Finally, in Count 10 of her Complaint, Robinson alleges breach of contract claims against Morgan Stanley, DFS, McNamara-Corley, Sutter, and Zlateva. Specifically, Robinson alleges that her termination was contrary to assurances of continued employment made "by the head of the Law Department for DFS" in late March, 2004. (Compl.¶ 164). Additionally, Robinson alleges that the named defendants violated the company's "open door policy," failed to uphold the stated "Discover value" of "doing the right thing," broke their repeated promises to Robinson that retaliation would not be tolerated, and generally failed to enforce company policies regarding:

**\*15** harassment, disrupting of the work place, fraud or other proven acts of dishonesty, falsifying Company documents or records including performance results, and conduct that is likely to cause another employee, customer, or vendor of the Company embarrassment, loss of dignity, feelings of intimidation or loss of opportunity, including all forms of discrimination and harassment.

(Compl.¶¶ 165-68). Robinson attached to her Complaint copies of Morgan Stanley's Code of Conduct, its Open Door Policy, and parts of the Employee Handbook for Morgan Stanley-Credit Services. (Ex. B-D).

At the outset, the Morgan Stanley Defendants argue that Robinson's breach of contract claim is barred by the Illinois Statute of Frauds, insofar as Robinson relied on verbal assurances of continued employment with Morgan Stanley/DFS. *See*740 Ill. Comp. Stat. 80/1. In support of this argument, the Morgan Stanley Defendants cite to *Czapla v. Commerz Futures, LLC,* 114 F.Supp.2d 715, 720 (N.D.Ill.2000). In *Czapla,* the district court recognized that contracts for lifetime employment must be made in writing in order to be enforceable under Illinois law. *Id.* at 719 (citing *McInerney v. Charter Golf, Inc.,* 176 Ill.2d 482, 223 Ill.Dec. 911, 680 N.E.2d 1347 (Ill.1997)). However, the *Czapla* court also specifically held that contracts for employment of indefinite duration are presumed to be "at will," and as such fall "outside the statute of frauds." *Id.* at 720.In this case, Robinson alleges that "McNamara-Corley assured the Plaintiff she had a job in Audit" and Robinson received "assurance in or around late March 2004 of continued employment by the head of the Law Department for DFS." (Compl.¶¶ 45, 164). Because these alleged assurances are for employment of an indefinite duration, the statute of frauds does not apply as a bar to Robinson's breach of contract claim.

Next, the Morgan Stanley Defendants argue that Robinson cannot have reasonably believed that McNamara-Corley extended an authorized, enforceable offer of employment. In support of this argument, the Morgan Stanley Defendants direct the court to the first page of the Employee Handbook, which was attached as an exhibit to Robinson's Complaint.[FN10]The Employee Handbook states:

> FN10. Any exhibits attached to a complaint are considered to be a part of the pleadings. *Moranski v. Gen. Motors Corp.,* 433 F.3d 537, 539 (7th Cir.2005).

**In no event shall the hiring of an employee be considered as creating a contractual guarantee of employment for any specific duration. Accordingly, an employee's employment and compensation can be terminated with or without cause or notice at any time at the option of either the employee or the Company.**
No employee or representative of the Company, other than an authorized officer, has any authority to enter into any agreement for employment for any specific period of time or to make any agreement contrary to the foregoing. Further, no such agreement entered into by an authorized officer of the Company shall be enforceable unless it is in writing and duly executed by the employee and respective officer.

**\*16** (Compl., Ex. C & D at 2). Based on this language, the court agrees that oral assurances of continued employment cannot be considered enforceable; however, it is unclear from Robinson's complaint whether the assurances made by McNamara-Corley were oral or in writing. Viewing the allegations in the light most favorable to Robinson, the court finds that the Complaint does not contain any facts inconsistent with a theory of recovery based on written assurances of continued employment with Morgan Stanley/DFS.

Furthermore, as head of the Law Department for DFS, it is certainly possible that McNamara-Corley may have been an authorized officer of "the Company." The Employee Handbook defines "the

Company" as "Morgan Stanley-Credit Services," and goes on to explain that "Credit Services includes all employees considered to be part of Discover Financial Services, Inc. and all Morgan Stanley employees having responsibilities for Discover Financial Services, Inc." (Compl., Ex. C & D at 2). Robinson also argues that McNamara-Corley had apparent authority to function as an authorized officer of Morgan Stanley/DFS, if not actual authority. Again, the court finds nothing in Robinson's Complaint that would necessarily preclude her from recovering for breach of contract. The court thus denies the Morgan Stanley Defendants' request to dismiss Count 10 on the basis that no authorized contract for continued employment could have existed under the facts alleged by Robinson.

Finally, the Morgan Stanley Defendants argue that the clear and express disclaimer at the beginning of the Employee Handbook precludes Robinson from bringing breach of contract claims based on alleged violations of the policies contained in the Employee Handbook. At the beginning of the Employee Handbook, page one states:
**The contents of this handbook are general and intended solely as a guide. The language used and the information contained herein are not intended to constitute or create, nor are they to be construed to constitute or create, the terms of an employment contract between the Company (or any of its subsidiaries or affiliates) and any employee, or a guarantee of employment for any specific duration.**

(Compl., Ex. C & D at 2). A clear and forthright disclaimer "is a complete defense to a suit for breach of contract based on an employee handbook."*Workman v. United Parcel Service, Inc., 234 F.3d 998, 1000 (7th Cir.2000)*. Count 10 is therefore dismissed, insofar as it argues breach of the policies set forth in the Employee Handbook.

*CONCLUSION*

For the foregoing reasons, the Morgan Stanley Defendants' Motion to Dismiss, (Dkt. No. 20), is granted in part and denied in part. Count 1 (Retaliatory Discharge) is dismissed against individual defendants Vesela Zlateva, Kerry Piercy, Tony DeLuca, David Sutter, Kelly McNamara-Corley, and Karen Dollmeyer; Count 2 (Illinois Whistleblower Act) is dismissed against individual defendants David Sutter, Vesela Zlateva, Kerry Piercy, Kelly McNamara-Corley, Bernice Jee, Carole Hoffman, David Oppenheim, Tony DeLuca, and Karen Dollmeyer, and against defendant Morgan Stanley and defendant Discover Financial Services insofar as Count 2 asserts claims under §§ 10 and 15 of the Illinois Whistleblower Act; Count 3 (Defamation) is dismissed without prejudice; Count 4 (Intentional Infliction of Emotional Distress) is dismissed with prejudice; Count 5 (Fraud) is dismissed without prejudice; Count 6 (Intentional Interference with Economic Relations) is dismissed with prejudice; Count 7 (Illinois Personnel Record Review Act) is not dismissed and remains in its entirety; Count 8 (Illinois Equal Pay Act) is dismissed with prejudice; Count 9 (FMLA) is not dismissed and remains in its entirety; and Count 10 (Breach of Contract) is dismissed insofar as it alleges breach of policies set forth in the Employee Handbook. KPMG's Motion to Dismiss, (Dkt. No. 17), is granted in its entirety; Count 2 (Illinois Whistleblower Act) is dismissed against individual defendant Rocco deGrasse and Count 5 (Fraud) is dismissed against defendant Rocco deGrasse and defendant KPMG, without prejudice.

*17 Robinson is given until on or before October 15, 2007 to file a First Amended Complaint consistent with this opinion and order. Defendants are given until October 29, 2007 to answer or plead to the First Amended Complaint. The parties are to hold a Rule 26(f) scheduling conference on or before November 9, 2007 and file an agreed Form 35 on or before November 15, 2007. The case is set for a report on status and scheduling conference at 9:00 a.m. on November 21, 2007.

N.D.Ill.,2007.
Robinson v. Morgan Stanley
Slip Copy, 2007 WL 2815839 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.